HILARY P. HAMMELL, ESQ., State Bar No. 291347
E-Mail: hilary@hammell.law
LAW OFFICES OF HILARY HAMMELL, A.P.C.
212 Ninth Street, Suite 314
Oakland, CA 94607
Tel.: (510) 250-3175

RACHEL M. TERP, ESQ. State Bar No. 290666
E-Mail: rachel@terplaw.com
TERP LAW
2831 Telegraph Avenue
Oakland, CA 94609
Tel.: (510) 550-5103

*Attorneys for Jon Chaikin*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JON CHAIKIN<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RED VENTURES, LLC, RED VENTURES GROUP, LLC, RED VENTURES HOLDCO, LP, RBUS, Inc., and DOES 1-10, inclusive,<br><br>　　　　Defendants | Case No.<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, INJUNCTIVE RELIEF FOR EMPLOYMENT DISCRIMINATION.**<br><br>1) **Associational Disability Discrimination in Violation of California Employment and Housing Act (FEHA), Cal. Gov. Code § 12940** *et seq.*;<br>2) **Failure to Provide a Reasonable Accommodation in Violation of FEHA, Cal. Gov. Code § 12940,** *et seq.*;<br>3) **Age Discrimination in Violation of FEHA, Cal. Gov. Code § 12940** *et seq.*;<br>4) **Gender Discrimination in Violation of FEHA, Cal. Gov. Code § 12940** *et seq.*;<br>5) **Failure to Prevent Discrimination, Cal. Gov. Code § 12940** *et seq.*;<br><br>DEMAND FOR JURY TRIAL |

### I. NATURE OF THE ACTION

1. Plaintiff Jon Chaikin brings this action against his former employer, Red Ventures, LLC, related entities, and Does 1-10, alleging claims for age discrimination, gender discrimination, associational disability discrimination, failure to provide a reasonable accommodation, and failure to take all reasonable steps to prevent discrimination.

### II. PARTIES

2. As of the filing of the original complaint in this matter, Plaintiff Jon Chaikin (hereinafter "Chaikin") resided in Riverside, California.

3. Defendant Red Ventures, LLC is a limited liability company formed in North Carolina which maintains its principal office in South Carolina.

4. Defendant Red Ventures Group, LLC is a limited liability company formed in South Carolina. Red Ventures, LLC is listed as the manager or member of Red Ventures Group, LLC on the October 10, 2022 Statement of Information filed by Red Ventures Group LLC with the California Secretary of State.

5. Defendant RBUS, Inc. is a stock corporation formed in North Carolina that maintains its principal office in South Carolina.

6. Red Ventures Holdco, LP, is a Delaware Limited Partnership. On information and belief, none of the Partners of Red Ventures Holdco, LP are residents of California.

7. On information and belief, Defendants RBUS, Inc., Red Ventures Holdco, LP, Red Ventures, LLC and Red Ventures Group, LLC are all Jon Chaikin's employers under the doctrines of joint employer, integrated enterprise, single employer, alter ego, or under the totality of the circumstances. All four of the above-named Defendants will be referred to in this Complaint as "Red Ventures." According to the Confidentiality Agreement and Invention Assignment that Mr. Chaikin was required to sign as a condition of his employment, Red Ventures, LLC and RBUS, Inc. are

"wholly-owned, indirect subsidiaries of Red Ventures Holdco, LP, a Delaware Limited Partnership." Mr. Chaikin received paystubs from "Red Ventures, LLC," but was required to sign an employment agreement with "RBUS, Inc and its affiliates" including Red Ventures, LLC. During Mr. Chaikin's employment and at all relevant times, Red Ventures maintained an office located in the City of San Francisco, employed at least 100 employees in California, and did business in California.

8. In addition to the Defendants named above, Plaintiff sues fictitiously Defendants DOES 1 through 10, inclusive, because their names, capacities, status, or facts showing them to be liable are not presently known. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and such Defendants caused Plaintiff's damages as herein alleged. Plaintiff will amend this complaint to show their true names and capacities, together with appropriate charging language, when such information has been ascertained.

### III.   JURISDICTION AND VENUE

9. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states.

10. The United States District Court for the Northern District of California has personal jurisdiction over Defendants because claims alleged in the complaint arise out of and relate to events that occurred within this District. Red Ventures employs workers in its San Francisco Office. Mr. Chaikin worked for Red Ventures' San Francisco office, and, but for Red Ventures' unlawful conduct, Mr. Chaikin would have continued to perform work for Red Ventures in San Francisco.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Red Ventures does business in California and in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

### IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. On November 29, 2022, Mr. Chaikin filed a timely complaint of discrimination and wrongful termination with the Civil Rights Department (CRD) (formerly the Department of Fair Employment and Housing (DFEH)) and requested an immediate right-to-sue letter. The CRD issued a right-to-sue letter on this complaint on November 29, 2022. Mr. Chaikin amended the right-to-sue letter on December 1, 2022 to include his full name. A copy of the complaint and notice of right-to-sue and amended versions is attached hereto as **Exhibit A**.

### V. FACTUAL ALLEGATIONS

13. In 2006, Jon Chaikin began working at Red Ventures' predecessor, CNet Media Group (hereinafter "CNet"), out of CNet's San Francisco office.

14. CNet is a group of websites that provides reviews, advertisements, promotions, and marketing of technology products, makes and produces TV content, produces email newsletters, and produces other content regarding technology products.

15. Mr. Chaikin's job at CNet involved, among other roles, affiliate marketing, commerce marketing, and managing partnerships with technology companies that advertised and sold products through CNet's websites and newsletters. His job evolved over his sixteen years at CNet, and he took on increasingly more responsibility, and bigger client relationships such as large national retailers.

16. In 2012, as part of his role, Mr. Chaikin took over writing, curating, and managing the "CNet Deals and Promotions" newsletter. In this role, he conceived of and implemented effective ways to use the newsletter to make sales, and expanded the newsletter to be sent out 5 times a week. Under his leadership, the newsletter became a successful revenue-generator for CNet and was profitable for the company.

17. Mr. Chaikin worked hard for CNet to ensure the newsletter was completed and sent out on time. Mr. Chaikin regularly put in 10- to 12-hour workdays. Mr. Chaikin worked nights and

weekends, and sometimes forewent vacation, for the benefit of CNet and its advertising clients. Mr. Chaikin loved his work for CNet. He took pride in his job and found it interesting, satisfying, and a source of enjoyment and dignity.

18. Mr. Chaikin's wife suffers from several disabilities that impact her functioning and limit her ability to work or take care of herself. Starting in or around 2006, Mr. Chaikin served as his wife's primary caregiver.

19. In 2018, due to his wife's disabilities, Mr. Chaikin's supervisors at CNet, David Bricker and Erik Weigel, gave him permission to work from home for most of the week. His regular schedule was to work from his home in the City of Novato, California, four and a half days per week, and to go into CNet's San Francisco office for one half-day per week. CNet granted this accommodation. Mr. Chaikin's supervisors at CNet knew this accommodation was due to his wife's disabilities and Mr. Chaikin's need to care for her.

20. In or around March of 2020, due to the COVID-19 pandemic, CNet allowed its entire staff, including Mr. Chaikin, to work remotely, full time.

21. In or around late 2020, Red Ventures purchased CNet.

22. In October of 2020, Red Ventures required Mr. Chaikin to sign, as a condition of continued employment, an "offer of employment," stating that his job title would be Senior Project Manager, and that his employment would be "contingent on the sale of CNET Media Group to Red Ventures." "Red Ventures" was defined in the cover letter as "RBUS Inc. and its affiliates." In the Confidential Information and Invention Assignment document attached to the cover letter, which Mr. Chaikin was required to sign, the contract was described as being between Mr. Chaikin "and RBUS, Inc., a North Carolina corporation and a direct subsidiary of its parent, Red Ventures, LLC."

23. After signing the October 2020 document, Mr. Chaikin continued to have the same managers, Mr. Bricker and Mr. Weigel.

24. In or around April of 2021, Mr. Chaikin and his wife decided to move to Riverside, California temporarily, to be closer to his wife's family, in order to make her care more manageable. Mr. Chaikin informed his managers as well as Red Ventures' Human Resources (HR) department, of this move. Once in Riverside, it became evident to Mr. Chaikin that being closer to family made his wife's care more manageable, so he and his wife decided to stay in Riverside. Despite working from Riverside, Mr. Chaikin was still considered an employee of the San Francisco office. For example, Mr. Chaikin's supervisor, Mr. Bricker, was based out of the San Francisco office, and in Mr. Chaikin's Employee Profile in the company's Workday system, Mr. Chaikin was listed as affiliated with the San Francisco office.

25. Mr. Chaikin's supervisors knew he worked remotely, from Riverside, in order to care for his disabled wife. In or around early 2022, Mr. Chaikin was transferred from the supervisor he had worked with for years at CNet, Mr. Bricker, to a new supervisor from Red Ventures, named Darshan Patel. Mr. Patel reported to a Vice President named Tyler O'Rourke, also from Red Ventures. Mr. Chaikin asked Mr. Bricker if his new supervisors knew that he worked remotely from Riverside. Mr. Bricker assured Mr. Chaikin that Mr. Patel and Mr. O'Rourke knew that Mr. Chaikin worked remotely from Riverside in order to care for his disabled wife.

26. On several occasions after he began working from home in 2018, Mr. Chaikin asked for a promotion. At least once a year in 2019, 2020, 2021, and 2022, Mr. Chaikin asked his supervisor Mr. Bricker for a promotion from Senior Manager to Director level, given his accomplishments, his expanding scope of responsibilities, the revenue his work secured for the company, and his tenure at the company. Mr. Chaikin observed many other CNet employees receive promotions from Senior Manager to Director level, and then to Senior Director level, and believed that he was entitled to a promotion. Mr. Bricker told Mr. Chaikin that he agreed, and that Mr. Chaikin was in fact entitled to a promotion. However, CNet and Red Ventures never promoted Mr. Chaikin. In or around late 2021, Mr.

Chaikin complained to a Senior Vice President that he had never been promoted, despite being deserving of a promotion. That Senior Vice President said that the company had accommodated Mr. Chaikin to work from home and take care of his wife and suggested that that was the reason the company had not promoted Mr. Chaikin.

27. In or around early 2022, Mr. Patel repeatedly told Mr. Chaikin that his performance would be evaluated based on "trajectory." Mr. Patel said to Mr. Chaikin that the company was "looking for trajectory, do you have trajectory with the company?"

28. In or around February 2022, Red Ventures CEO Ric Elias emailed Red Ventures employees, announcing a mandatory Return to Office policy, in which all employees were required to come to the office three days per week. In response to this email, Mr. Patel instructed Mr. Chaikin to inform HR that Mr. Chaikin was fully remote. In a February 28, 2022 email, Mr. Chaikin did so, emailing HR, Mr. O'Rourke, Mr. Patel, and Mr. Bricker, stating that he had previously worked remotely four days a week to "care for my wife," and explaining that "once the pandemic came, I switched to being fully remote," and that he was willing to "come up to San Francisco for events and the like [and would] cover the expense for that myself." He requested that his records be updated to reflect his remote status. In a March 1, 2022 email, Red Ventures responded by pointing to the return to work policy, and offering to consider a request for a remote exception. Mr. Chaikin responded that he thought he was already on fully remote status, but asked for more information about the process for obtaining a remote exception.

29. On March 8, 2022, Mr. O'Rourke asked Mr. Chaikin for a video meeting. In that meeting, Mr. O'Rourke first asked Mr. Chaikin how he was doing. Mr. Chaikin mentioned that it was hard taking care of his wife. Mr. O'Rourke made an aside about how hard it was for Mr. O'Rourke to take care of his own mother. Mr. O'Rourke then told Mr. Chaikin he was being fired. Mr. O'Rourke did not give a reason. Mr. Chaikin was stunned.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

30. On March 10, 2022, Red Ventures sent Mr. Chaikin a letter stating he was being terminated for not abiding by the Return-to-Office policy.

31. After receiving the letter, Mr. Chaikin spoke with Mr. Patel and pleaded for his job back. He explained that he thought he had the company's permission to work from home so as to care for his disabled wife, but that he would be willing to come into the San Francisco office one day per week, and offered to fly at his own expense to go to the San Francisco office in person. Mr. Chaikin also pointed out that other Red Ventures employees were allowed to either work from home or go to the office fewer than three days per week. He offered to take a pay cut if he could have his job back. He told Mr. Patel he would do anything to get his job back. Mr. Patel refused Mr. Chaikin's offers. Mr. Patel told Mr. Chaikin that his firing was not only related to the Return-to-Office policy, but also because Mr. Chaikin was of "limited value," had "too high a cost" for his role and level and had "no career trajectory."

32. After that conversation with Mr. Patel, Mr. Chaikin contacted Human Resources (HR). On March 15, 2022, Mr. Chaikin wrote to HR and said: "as you know, I have been working fully remotely for several years with the express permission of my supervisors in order to provide care for my wife, who has a disabling medical condition. Throughout this time…I have continued to perform my job duties effectively, without any undue hardship to Red Venture[s]"  He explained that after the company "announced its hybrid return to work policy," he had "reiterated" his "request for a work-from-home accommodation related to my wife's disability, and even offered to fly up to San Francisco 1 day per week on my own expense as a show of my commitment to Red Venture[s]." He noted that other employees "have been granted exemptions from the hybrid return to work policy" and that a fellow colleague on the Commerce team was allowed to come in one day per week due to living a long distance from the office. He also reported to HR that after he had offered to Mr. Patel to fly to San Francisco on his own expense, "my supervisor Darshan reached out to me on March 10 to inform

me that the decision regarding my termination was not in fact solely about the return-to-office issue" but that Mr. Patel had told him he had "limited value," "too high a cost," and "no career trajectory." Mr. Chaikin told HR he believed these comments "evince bias against me based on my age (I am 64 years old), my association with a person with disabilities (my wife), and my care responsibilities for a person with disabilities (my wife)." He requested that the company reconsider its decision to fire him.

33. Red Ventures did not offer Mr. Chaikin his job back or take him up on his offer to come into the office once a week in person.

34. Mr. Chaikin stayed in the job through early April 2022 while Red Ventures had him train his replacements. His job duties were distributed amongst several workers, all of whom were younger than him, and on information and belief, younger than forty (40) years old at the time.

35. When Red Ventures fired Mr. Chaikin, he was one month shy of his sixty fourth (64th) birthday.

36. On information and belief, numerous other Red Ventures employees older than forty (40) years old were also fired in 2022 or felt pressured to leave, and were replaced by younger workers.

37. Ric Elias, David Bricker, Darshan Patel, Marc McCollum, and Tyler O'Rourke, among others, are managing agents, and/or officers, and/or directors of Red Ventures.

38. This devastating end to Mr. Chaikin's career has had significant financial and emotional consequences. Due to his unjust treatment by Red Ventures, Mr. Chaikin has felt, inter alia, mental anguish, stress, anger, frustration, anxiety, distress, sadness, fear for his future, powerlessness, a sense of loss, including loss of confidence, loss of sense of self, and loss of identity.

//    //

//    //

//    //

# FIRST CAUSE OF ACTION
## Associational Disability Discrimination
## in Violation of California Fair Employment and Housing Act
## [Cal. Gov. Code § 12940(m)]
## (By Plaintiff against Defendants)

39. Plaintiff re-alleges and incorporates by reference the foregoing, as though fully set forth herein.

40. Defendants are employers within the meaning of the FEHA.

41. At all times material to this complaint, Plaintiff was Defendants' employee within the meaning of the FEHA.

42. Plaintiff was associated with a person with a disability, his wife, who had and continues to have medical conditions that limit her major life activities. Defendants knew Plaintiff was associated with a person with a disability, and knew that Plaintiff provided ongoing disability-related care for his wife.

43. Plaintiff was able to perform his essential job duties with or without reasonable accommodation.

44. Defendants subjected Plaintiff to adverse employment actions.

45. Plaintiff's association with a person with a disability was a substantial motivating reason for Defendants' conduct.

46. Plaintiff was harmed.

47. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

48. As a direct and further proximate result of the above violations of his rights, Plaintiff has suffered damages, including past and future wage loss, emotional distress damages, pre- and post-judgment interest, and all other economic relief available under law, in an amount to be proven at trial.

49. As a result of Defendants' unlawful acts, Plaintiff is entitled to compensatory damages

and equitable relief.

50. As a result of Defendants' unlawful acts, Plaintiff is entitled to declaratory relief.

51. As a result of Defendants' unlawful acts, Plaintiff is entitled to injunctive relief.

52. As a result of Defendants' unlawful acts, Plaintiff is entitled to attorneys' fees and costs.

53. Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. The conduct constituting malice, oppression, or fraud was committed by, authorized by, or ratified by one or more officers, directors, or managing agents of Red Ventures. One or more officers, directors, or managing agents knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

## SECOND CAUSE OF ACTION
### Failure to Provide a Reasonable Accommodation
### in Violation of California Fair Employment and Housing Act
### [Cal. Gov. Code §12940(m)]
### (By Plaintiff against Defendants)

54. Plaintiff re-alleges and incorporates by reference the foregoing, as though fully set forth herein.

55. Defendants are an employer within the meaning of the FEHA.

56. At all times material to this complaint, Plaintiff was Defendants' employee within the meaning of the FEHA.

57. Plaintiff was associated with a person with a disability, his wife, who had and continues to have medical conditions that limit her major life activities. Defendants knew Plaintiff was

11
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

associated with a person with a disability, and knew that Plaintiff provided ongoing disability-related care for his wife.

58. Plaintiff was able to perform his essential job duties with or without reasonable accommodation.

59. Defendants failed to provide a reasonable accommodation for Plaintiff to care for his wife's disability.

60. Plaintiff was harmed.

61. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

62. As a direct and further proximate result of the above violations of his rights, Plaintiff has suffered damages in the form of past and future wage loss, pre- and post-judgment interest, emotional distress damages, and all other economic relief available under law, in an amount to be proven at trial.

63. As a result of Defendants' unlawful acts, Plaintiff is entitled to compensatory damages and equitable relief.

64. As a result of Defendants' unlawful acts, Plaintiff is entitled to declaratory relief.

65. As a result of Defendants' unlawful acts, Plaintiff is entitled to injunctive relief.

66. As a result of Defendants' unlawful acts, Plaintiff is entitled to attorneys' fees and costs.

67. Defendant did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. The conduct constituting malice, oppression, or fraud was committed by, authorized by, or ratified by one or more officers, directors, or managing agents of Red Ventures. One or more officers, directors, or managing agents knew of the conduct constituting malice, oppression, or fraud and adopted or approved that

conduct after it occurred. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

**THIRD CAUSE OF ACTION**
**Gender Discrimination**
**In Violation of California Fair Employment and Housing Act ("FEHA")**
**[Cal. Gov. Code § 12940(a)]**
**(By Plaintiff against Defendants)**

68. Plaintiff re-alleges and incorporates by reference the foregoing, as though fully set forth herein.

69. At all times material to this complaint, Plaintiff was an employee within the meaning of the FEHA.

70. Defendants are an employer within the meaning of the FEHA.

71. Plaintiff satisfactorily performed in his position with Red Ventures.

72. Plaintiff's gender was a substantial motivating reason for the adverse employment actions, in violation of FEHA.

73. Defendants discriminated against Plaintiff by treating him adversely due to his caretaking responsibilities for his wife, which was contrary to gender stereotypes that presume men should not be encumbered by caregiving and/or family responsibilities.

74. As a direct and further proximate result of the above violations of his rights, Plaintiff has suffered damages in the form of past and future wage loss, pre- and post-judgment interest, emotional distress damages, and all other economic relief available under law, in an amount to be proven at trial.

75. As a result of Defendants' unlawful acts, Plaintiff is entitled to compensatory damages and equitable relief.

76. As a result of Defendants' unlawful acts, Plaintiff is entitled to declaratory relief.

77.  As a result of Defendants' unlawful acts, Plaintiff is entitled to injunctive relief.

78.  As a result of Defendants' unlawful acts, Plaintiff is entitled to attorneys' fees and costs.

79.  Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. The conduct constituting malice, oppression, or fraud was committed by, authorized by, or ratified by one or more officers, directors, or managing agents of Red Ventures. One or more officers, directors, or managing agents knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

**FOURTH CAUSE OF ACTION**
**Age Discrimination in Violation of the Fair Employment and Housing Act**
**[Cal. Gov. Code § 12940(a)]**
**(By Plaintiff against Defendants)**

80.  Plaintiff re-alleges and incorporates by reference the foregoing, as though fully set forth herein.

81.  Plaintiff was an employee within the meaning of the FEHA.

82.  Defendants were Plaintiff's employer within the meaning of FEHA.

83.  Defendants took adverse employment actions against Plaintiff including firing him.

84.  Plaintiff was age 63 at the time he was terminated, and over 40 during his periods of non-promotion.

85.  Plaintiff's age was a substantial motivating reason for Defendants' decisions to impose adverse employment actions.

86.  Plaintiff was harmed.

87. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

88. As a direct and further proximate result of the above violations of his rights, Plaintiff has suffered damages in the form of past and future wage loss, pre- and post-judgment interest, emotional distress damages, and all other economic relief available under law, in an amount to be proven at trial.

89. As a result of Defendants' unlawful acts, Plaintiff is entitled to compensatory damages and equitable relief.

90. As a result of Defendants' unlawful acts, Plaintiff is entitled to declaratory relief.

91. As a result of Defendants' unlawful acts, Plaintiff is entitled to injunctive relief.

92. As a result of Defendants' unlawful acts, Plaintiff is entitled to attorneys' fees and costs.

93. Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. The conduct constituting malice, oppression, or fraud was committed by, authorized by, or ratified by one or more officers, directors, or managing agents of Red Ventures. One or more officers, directors, or managing agents knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred. Plaintiff is thus entitled to recover punitive damages from Defendants in an amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

### FIFTH CAUSE OF ACTION
### Failure to Prevent Discrimination
### [Cal. Gov. Code §12940(k)]
### (By Plaintiff against Defendants)

94. Plaintiff re-alleges and incorporates by reference the foregoing, as though fully set forth herein.

95. At all times material to this complaint, Plaintiff was an employee within the meaning of the FEHA.

96. Defendants are an employer within the meaning of the FEHA.

97. Cal. Govt. Code § 12940 (k) requires employers to take all reasonable steps necessary to prevent discrimination, retaliation, and harassment from occurring.

98. As set forth above, Plaintiff was subjected to discrimination on the basis of his gender (male, behaving contrary to stereotypes), associational disability, and age.

99. Defendants failed to take all reasonable steps to prevent discrimination from occurring.

100. As a direct and further proximate result of the above violations of his rights, Plaintiff has suffered damages in the form of past and future wage loss, other pecuniary losses, and emotional distress in an amount to be proven at trial.

101. As a result of Defendants' unlawful acts, Plaintiff is entitled to compensatory damages and equitable relief.

102. As a result of Defendants' unlawful acts, Plaintiff is entitled to declaratory relief.

103. As a result of Defendants' unlawful acts, Plaintiff is entitled to injunctive relief.

104. As a result of Defendants' unlawful acts, Plaintiff is entitled to attorneys' fees and costs.

105. Defendants did the acts alleged herein maliciously, fraudulently, and oppressively, and/or with the wrongful intention of injuring Plaintiff, and/or with conscious disregard of the rights and safety of Plaintiff, and/or with an improper and evil motive amounting to malice. The conduct constituting malice, oppression, or fraud was committed by, authorized by, or ratified by one or more officers, directors, or managing agents of Red Ventures. One or more officers, directors, or managing agents knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred. Plaintiff is thus entitled to recover punitive damages from Defendants in an

amount according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1. Compensatory damages on all causes of action;

2. Punitive damages on all causes of action;

3. Injunctive and declaratory relief on all causes of actions.

4. Attorneys' fees with respect to all causes of action;

5. Costs of suit;

6. Such other and further relief as the Court deems just and proper.

DATED:  December 2, 2022            LAW OFFICES OF HILARY HAMMELL, A.P.C

By:  __/s/ Hilary P. Hammell_____
     HILARY P. HAMMELL
Attorneys for Plaintiff Jon Chaikin

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**DEMAND FOR JURY TRIAL**

  Plaintiff hereby demands a trial by jury for each and every claim for which he has a right to jury trial.

DATED:  December 2, 2022    LAW OFFICES OF HILARY HAMMELL, A.P.C

              By:   /s/ Hilary P. Hammell
                HILARY P. HAMMELL
             Attorneys for Plaintiff Jon Chaikin